BOWMAN

*v*.

PRICE.

(*Supreme Court of Appeals of Virginia, October 8, 1873.*)

**Equity Practice—Denial of Allegations in a Bill.**

Where the material allegations of a bill are explicitly denied, such allegations must be sustained by two witnesses, or one witness and strong corroborating circumstances.

Appeal from circuit court of Rockingham county.

The complainant filed his bill asking relief from a debt on the ground that his tender of the money had been refused and by reason of such refusal the Confederate notes in which the debt was payable had become wholly lost to him.

Such tender was denied in the answer of the defendant, and the complainant failed to substantiate it by two witnesses, or one witness and strong corroborating circumstances.

*John Roller*, for appellant.

No appearance for appellee.

STAPLES, J., delivered the opinion of the court.

The bill alleges that the complainant John Bowman, Jr., on the 7th of January, 1862, borrowed from the defendant Jacob Price one thousand dollars in Confederate treasury

notes and that on the same day he executed and delivered to the defendant his single bill for the sum so borrowed and that said bill, according to the true understanding of the parties, was to be paid in the same kind of currency. It also avers that on the —— day of February, 1862, not later than the 15th of the month, the complainant made to the defendant a bona-fide and actual tender of the amount due on said obligation in Confederate currency, and the defendant refused to accept the same. It further avers that on the —— day of June, 1862, the complainant made another tender of the amount due, which was also refused, and that by reason of such refusal, said Confederate notes having been wholly lost to the complainant, he is entitled to be released against the payment of the debt. The bill also alleges that the defendant, Price, had instituted suit at law and recovered judgment upon the bond, and the prayer is for an injunction and appropriate relief.

The defendant answered the bill, explaining in detail the circumstances under which the money was loaned. He admits that a few days before the 1st day of April, 1864, at which time under the act of Congress the old issue of Confederate notes was to be funded at a discount of $33\frac{1}{3}$ per cent., and when the same was generally known, David H. Bowman, the son of complainant, came to defendant's house stating that he came to pay the bond. Defendant enquired of him whether he would take off the one-third, to which young Bowman replied he would not. Defendant thereupon informed him he could not stand to loose one-third on the face of his debt and also the increased depreciation which had occurred since the date of the loan, and with this the interview substantially became closed. The defendant positively and unquestionably denies that any other actual or pretended tender or offer of payment was ever made on any other occasion.

The material allegations of the bill in reference to the tender being thus explicitly denied, it devolved upon complainant to sustain them by two witnesses or one witness with corroborating circumstances. Complainant's own deposition was taken in the case and it fully sustains the averments in regard to the tenders made in February and June, 1862, respectively. I do not propose to consider the question often suggested but never decided by this court whether the statute now permits parties to testify. The answer of the defendant may be overthrown by the evidence of the plaintiff supported by another witness, or by corroborating circumstances only. More especially when the defendant also testifies in support of his answer. Giving to the testimony of the complainant here all the weight due to a disinterested and unimpeachable witness, the difficulty is, it is not sustained either by any other reliable witness or by any corroborating circumstances. It is true that David Bowman, the son of the complainant, undertakes to repeat a statement made to him by defendant in the spring of 1864, when witness went there to pay off the bond. He stated that the defendant in refusing to accept the tender then made said that complainant had tendered him the money before, that he would not take it then and he would not take it now. I do not attach much importance to this statement. The defendant positively denies he ever made any such declaration. The witness at the time was a young man about twenty-one or two years of age, and is attempting to repeat words alleged to have been used nearly five years before his testimony was given. His testimony contains material evidences of a want of veracity or of recollection which deprive it of all claim to credibility. It will be observed that the bond was executed in January, 1862. It was necessary, therefore, that the witness should tender not only the one thousand dollars of principal, but the one hundred and twenty dollars of accrued interest. After stating that he had tendered the defendant the money,

telling him he had $1,000.00, he is asked: "Is $1,000.00 all you tendered him?" His answer is, "As far as I recollect." He was asked if that was all the money he had. He answered, "No, sir ; I had a little more with me ; I always carried money." It is clear that up to· this point the witness had proved the tender of $1,000.00, without interest, and it was certain this would not answer the necessaries of complainant's case. The ingenious counsel clearly perceived this would not do and so by a series of adroit questions the mind of the witness is brought to the desired point. He was often asked if he went there to pay defendant the whole bond, interest and all. He answers in the affirmative. He is next asked, "State whether you recollect now exactly what amount you tendered him." His answer is, "It was $1,000.00 and interest from the time it was borrowed." I have no doubt that the defendant's account of the interview is entirely correct ; and that is, the son of complainant went · there representing his father's desire to pay off the bond and upon an understanding that the defendant would not receive it unless some allowance was made for the discount. Nothing more was said ; no tender was actually made, and the interview ended. Another fact shows the inaccuracy of young Bowman's recollection. He states that Mr. Thornton Thomas was not present at any time whilst he and defendant were talking about the money, but left the room as quick as he introduced witness to defendant. Mr. Thomas is examined and states that he was present during part of the interview ; that he heard part of the conversation, and he told the defendant that Mr. Bowman, the complainant, was very anxious for him to take the money.

Young Bowman expressly denies that anything was said or request made for an allowance on account of the discount of 33⅓ per cent. He does not merely undertake to give his recollection, but he positively avers no allusion was made to it. This is Mr. Thomas' account of what occurred :

"Young Mr. Bowman told him that his father had sent him to pay the note. I think he said $1,000.00. Mr. Price said he couldn't take it as there would be but a few days before there was a discount, and he could not take it unless his father would pay the discount." In this statement Mr. Thomas is sustained by the defendant and Mr. Arbigal Thomas, complainant's own witness.

I do not mean to assert that young Bowman has deliberately sworn falsely, but the inconsistencies and contradictions already adverted to plainly show that he is not an accurate or reliable witness and that no dependence can be reposed in his statements touching the defendant's admissions to him.

The question then arises, is the plaintiff's testimony relating to the supposed tenders of February and June, 1862, supported by any corroborating circumstances?

The evidence conclusively establishes the fact that the defendant was willing in March, 1864, to take the currency with all its enormous depreciation in payment of his debt provided complainant would make good the loss resulting from the discount of 33⅓ per cent. This evinced a generous and laudable spirit on the part of the defendant. Nothing could have been more liberal. The money he loaned complainant was deposited in bank in November, 1861, and was as valuable as gold, and when loaned was at a very slight depreciation. When the defendant agreed to accept payment the money had declined in the ratio of 20 for 1.

It is difficult to perceive that a creditor thus indulgent— thus willing to sustain such a loss in 1864, would deliberately and persistently refuse to receive the same money in February, 1862, and that too in violation of his most solemn and deliberate promise. There is not a fact or a circumstance, independent of complainant's evidence, which even tends to warrant any such conclusion.

It is very curious that complainant with all his annuity to discharge the obligation did not avail himself of defendant's

proposition to deduct from the money the discount and thus settle the debt.    The time and peculiar circumstances under which he offered to pay the debt (March, 1864), suggests as being suspicious of a device on his part to palm upon his creditor the old Confederate issue and make him sustain the loss arising from the act of Congress.

I do not believe that if he had made an unsuccessful tender in February, 1862, he would have sent his son with the currency in March, 1864.    He would have been satisfied that a creditor who declined to accept payment in such currency in February, 1862, would not receive it at the latter period.    Any man of the most ordinary perceptions would have understood the folly of such conduct.

The conduct of the complainant throughout is utterly inexplicable and inconsistent.    He permits himself to be persuaded into borrowing one thousand dollars at a time when he did not need it, and when, according to his own account, he had plenty of money.

Finding he cannot use the money he attempts to return it and time and again tenders the amount to his creditor who persistently refuses to receive it.    And yet on neither occasion does he take with him a witness, or supply himself with any evidence of the tender ; but he leaves so important a matter to the results of chance or accident and the recollection and good faith of his adversary.    And after these repeated tenders instead of keeping the notes in his possession he invests them along with other funds in Confederate bonds in his own name, thus showing he was not relying on the tender but upon his own investments to indemnify him against loss.

The complainant's version of the transaction is positively denied by defendant and is unsupported by the circumstances or any testimony of any reliable witness.    The result inevitably would seem to be a dismissal of his bill.